UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Christopher G. Machado

     v.                             Civil No. 10-cv-256-SM

Weare Police Department et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff, Christopher G. Machado, an inmate at the
Northern New Hampshire Correctional Facility ("NCF"), has filed
a complaint (doc. no. 1) asserting federal civil rights claims
and supplemental state law claims against the Police Department
in Weare, New Hampshire, and Officer Daniel R. Aiken; Sgt.
Robert J. Peterson; Sgt. Louis Chatel, Jr.; Lt. James J. Carney;
and Chief Gregory C. Begin, all of the Weare Police Department
("WPD").  Machado asserts that defendants violated his rights
under the Fourth and Fourteenth Amendment of the United States
Constitution, as well as his state constitutional rights, in
connection with his arrest and detention on a drug possession
charge that was later dropped for lack of evidence.  The
complaint, including the attachments thereto (doc. no. 1), is
before me for preliminary review to identify cognizable claims
and to dismiss claims upon which no relief can be granted.  See
28 U.S.C. § 1915A; United States District Court for the District
of New Hampshire Local Rule ("LR") 4.3(d)(2) (magistrate judge

is designated to conduct preliminary review of prisoner
complaints); see also Fed. R. Civ. P. 10(c) (written instrument
filed as exhibit to a pleading is part of that pleading for all
purposes).

### Standard of Review

Under LR 4.3(d)(2), when a prisoner files an action pro se,
the magistrate judge conducts a preliminary review.  In a
preliminary review, pro se pleadings are construed liberally,
however inartfully pleaded.  See Erickson v. Pardus, 551 U.S.
89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429
U.S. 97, 106 (1976), to construe pro se pleadings liberally in
favor of the pro se party).  "The policy behind affording pro se
plaintiffs liberal interpretation is that if they present
sufficient facts, the court may intuit the correct cause of
action, even if it was imperfectly pled."  Ahmed v. Rosenblatt,
118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United
States, 540 U.S. 375, 381 (2003) (courts may construe pro se
pleadings to avoid inappropriately stringent rules and
unnecessary dismissals).  This review ensures that pro se
pleadings are given fair and meaningful consideration.


To determine if a pleading filed pro se should be dismissed
or failing to state a claim on which relief could be granted,

the Court must consider whether the allegations, construed liberally, Erickson, 551 U.S. at 94, "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'"  Id. (citation omitted).  Determining if the pleadings state a viable claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950 (citation omitted).

### Background

    Machado is an inmate at NCF, serving a prison sentence on charges arising out of a traffic accident that occurred in Londonderry, New Hampshire, prior to April 29, 2009.  Machado's claims here relate to his arrest and detention on a heroin possession charge, which was filed against him on April 29, 2009, after the police in Weare, New Hampshire, stopped and

searched a car in which Machado was a passenger.  The
circumstances relating to Machado's claims are described below.

On April 29, 2009, shortly before 1:00 a.m., Machado was
riding in a car driven by his fiancée at that time, Ashley
Fermanis.  Defendant Weare Police Lt. Carney, in a cruiser
nearby, became suspicious of Fermanis's car when he saw its
left-turn signal run for ten seconds before the car turned left
across the highway into a vacant parking lot of a closed
business.  Carney turned on his cruiser's blue lights, stopped
Fermanis's car, and approached the passenger's side when he saw
furtive movements on that side of the car.  Speaking with the
passenger (Machado), Carney found his answers evasive, as, among
other things, Machado would identify himself only as "Chris,"
refused to give his last name, did not present identification,
and stated he couldn't remember his social security number.
Also, Carney noticed a bulge in Machado's front waistband.
Carney asked Machado to step out of the car so that Carney could
confirm Machado's identity, and so that Carney could conduct a
brief pat-frisk for safety.  The pat-frisk revealed the bulge to
be a cell phone in a case.  While this was occurring, Fermanis
told Carney that Machado may be wanted in connection with an
accident in Londonderry, New Hampshire.

Carney asked Fermanis, based on a smell of burnt marijuana in the car, whether there were drugs in the car and asked to search the car.  Fermanis stated the smell in the car was from a skunk she had hit, but she voluntarily consented to the officer's search of her car.  In the car, on the passenger's side where Machado had been sitting, Carney found a pack of cigarettes which contained what, based on Carney's police experience, he believed to be heroin.  Fermanis told the police that Machado had previously used heroin.  Carney formally arrested Machado at that point, and placed him, in handcuffs, in the back seat of his police cruiser.

Sgt. Peterson and Officer Aiken arrived at the scene to assist Carney.  After Peterson read Machado his <u>Miranda</u> rights, Machado admitted that the heroin was his, not Fermanis's, and that he had additional heroin tucked in his sock.  Carney's criminal record check confirmed that there was an active warrant for Machado's arrest in connection with a car accident.  Machado was driven back to the station, and defendant Sgt. Chatel signed an affidavit regarding the circumstances of Machado's warrantless arrest, to be used in connection with Machado's prosecution for heroin possession.

Several hours later, Machado appeared before a bail commissioner who set bail at $5000, pending Machado's

arraignment.  Machado did not post bail and was sent to the Hillsborough County Jail ("HCJ") to await arraignment.

At Machado's arraignment on the traffic accident charges, he received personal recognizance bail.  Cash bail was set on the heroin charge.  In a letter to HCJ staff, dated May 6, 2009, Weare Police Chief Begin transmitted a copy of a bail order for Machado, and characterized that order's conditions as restricting Machado's contacts with Fermanis, a witness.[1]  Citing the bail order, Begin specifically requested that Fermanis's visits and phone calls with Machado be limited.  Machado has asserted that the "no contact" order between him and Fermanis led to their break up, which has caused him emotional distress.

Machado also asserts that, were it not for the drug charge filed against him on April 29, 2009, he would have been released on the Londonderry charges on his own recognizance.  After the drug possession charge was filed, however, Machado spent more than six months in detention at the HCJ, awaiting the resolution of the drug and traffic accident charges.

_____

[1]Machado has attached Begin's May 6, 2009, cover letter to HCJ as an exhibit to his Complaint, but has not provided this court with a copy of the bail order transmitted with that letter, presumably, the order issued at Machado's arraignment on the heroin charge.  See Ex. E to Compl. (doc. no. 1-6).  I presume that the bail order issued at Machado's arraignment included a "no contact" restriction regarding Fermanis, as described in Begin's May 6, 2009, cover letter.

In September 2009, Machado's defense counsel filed a motion to suppress evidence recovered from Fermanis's vehicle in the heroin possession case, on the ground that the traffic stop was not based on a reasonable suspicion of criminal activity.  The Superior Court, in its October 2009 ruling on the motion to suppress, held that the facts known to Carney were insufficient to support a reasonable suspicion of criminal activity, and that the stop itself was illegal under Part I, Article 19 of the New Hampshire Constitution.  Relying on the exclusionary rule applicable to a state constitutional claim, the judge granted the motion to suppress.  See Ex. 7 to Compl. (doc. no. 1-7) (State v. Machado, 09-S-1517 (N.H. Super. Ct. Hillsborough Cnty., N. Dist., Oct. 5, 2009) (granting motion to suppress)).  The State then dropped the heroin possession charge.

Machado later pleaded guilty to the Londonderry traffic accident charges.  Machado's sentence on the Londonderry charges included a credit for all but twenty-seven days of his pretrial detention.  The twenty-seven days not credited towards Machado's sentence related only to the drug charge.

Machado asserts the following claims in this court[2]:

1.  Defendants are liable to Machado under 42 U.S.C.
    § 1983 for false arrest, in violation of his
    rights under the Fourth and Fourteenth
    Amendments, in that:  (a) Lt. Carney, while
    lacking any reasonable suspicion of criminal
    activity, nevertheless conducted an investigatory
    traffic stop that led to Machado's arrest and
    detention on the heroin possession charge; (b)
    Sgt. Peterson and Officer Aiken assisted in the
    arrest and detention of Machado on the heroin
    possession charge, following that illegal traffic
    stop; and (c) Sgt. Chatel executed an affidavit
    detailing the circumstances of Machado's
    warrantless arrest for the purpose of ensuring
    Machado's continued detention on the heroin
    possession charge.

2.  WPD Chief Begin and Sgt. Chatel are liable to
    Machado under 42 U.S.C. § 1983, in their
    supervisory capacities at the WPD.

3.  Defendants are liable under state law for false
    arrest, malicious prosecution, and intentional
    infliction of emotional distress, and for
    violating Machado's right to be free from an
    unreasonable search and seizure under the New
    Hampshire Constitution.

Machado asserts that he has suffered injuries consisting of:

(1) his inability to be released on personal recognizance bail

on the Londonderry charges; (2) the emotional distress he

suffered due to his loss of contact with Fermanis; and (3) the

twenty-seven days he spent in pretrial detention not credited

---

[2]The claims, as identified herein, will be considered to be
the claims raised in this case for all purposes.  If Machado
objects to the claims as identified here, he must do so by
filing a timely objection to this Report and Recommendation or
by properly moving to amend his complaint.

towards his sentence on the Londonderry charges.  Machado has
requested declaratory judgment and compensatory and punitive
damages.

## Discussion

### I.   False Arrest Claims Asserted under 42 U.S.C. § 1983

Machado asserts that defendants falsely arrested him, in
violation of his right to be secure in his person as guaranteed
by the Fourth and Fourteenth Amendments to the United States
Constitution.  The Fourth Amendment protects individuals against
unreasonable warrantless searches and seizures of their person.
See U.S. Const. amend. IV.  "'The right to be free from
unreasonable seizure (and, by extension, unjustified arrest and
detention) is clearly established in the jurisprudence of the
Fourteenth Amendment (through which the Fourth Amendment
constrains state action).'"  Pena-Borrero v. Estremeda, 365 F.3d
7, 12 n.8 (1st Cir. 2004) (quoting Camilo-Robles v. Hoyos, 151
F.3d 1, 6 (1st Cir. 1998); see also Albright v. Oliver, 510 U.S.
266, 273-74 (1994) (Fourth Amendment prohibition against
unreasonable searches and seizures applies to States through
Fourteenth Amendment).

In support of his allegation that his civil rights were
violated by his "false arrest," Machado cites the state court's
determination that Carney lacked a reasonable suspicion of

criminal activity sufficient to justify the stop of the motor vehicle in which he was a passenger, the state court's decision to suppress evidence, and the subsequent dismissal of the drug possession charge.  Machado's theory of liability is that all of the injuries he suffered after he was arrested are causally connected to, and are the fruits of, the illegal traffic stop. In effect, Machado is asserting that the exclusionary rule which applied in his criminal case should apply with equal force here, to prevent the Court from considering anything that occurred after the improper traffic stop in assessing the validity of Machado's subsequent seizure and arrest.

The exclusionary rule is a remedial device that applies in criminal proceedings to deter future unlawful police conduct; the rule is not a personal constitutional right.  See United States v. Calandra, 414 U.S. 338, 348 (1974) ("standing to invoke the exclusionary rule has been confined to situations where the Government seeks to use such evidence to incriminate the victim of the unlawful search").  A plaintiff cannot invoke the exclusionary rule in a civil rights case to limit the scope of facts and circumstances the Court may consider in assessing whether there was probable cause for an arrest resulting from evidence illegally seized.  See Townes v. City of New York, 176 F.3d 138, 150 (2d Cir. 1999) (fruit of the poisonous tree

doctrine does not apply to section 1983 action); cf. Vigeant v. United States, 245 Fed. App'x 23, 24 (1st Cir. 2007) (exclusionary rule did not apply in Federal Tort Claims Act case to prevent court from considering whether there was probable cause to support arrest of plaintiff as felon in possession of firearms, even though firearms at issue had been seized pursuant to search warrant not supported by probable cause).  Therefore, I take into consideration all of the facts and circumstances known to the police, including evidence obtained after the traffic stop and search of the car, in analyzing first whether the initial pre-arrest seizure of Machado's person, after the motor vehicle stop, was justified by a reasonable and articulable suspicion of criminal activity, and second, whether his arrest was supported by probable cause.

While, as previously stated, the Fourth Amendment protects individuals from unreasonable warrantless seizures of their person, not every seizure by a police officer based on less than probable cause violates the Fourth Amendment.  See Terry v. Ohio, 392 U.S. 1, 20 (1968).  In the ordinary course of events, a police officer is free to request that a person provide identification without implicating the Fourth Amendment.  See Hiibel v. Sixth Jud. Dist. Ct., 542 U.S. 177, 186 (2004).  If a police officer has a reasonable and articulable suspicion that a

person may be involved in criminal activity, the officer may briefly stop the person to investigate further.  See Hiibel, 542 U.S. at 185.  Such a stop, called a "Terry stop," must be "'justified at its inception, and . . . reasonably related in scope to the circumstances which justified the interference in the first place'" to be considered constitutionally reasonable. Hiibel, 542 U.S. at 187 (quoting Terry, 392 U.S. at 20) (additional citations omitted).  Terry stops based on reasonable suspicion are proper to investigate a suspect's identity, "to question him briefly, or to detain him briefly while attempting to obtain additional information."  Hayes v. Florida, 470 U.S. 811, 816 (1985).  Further, after a motor vehicle stop, upon reasonable suspicion that a car's occupants are "armed and dangerous," an officer can, under Terry, conduct a frisk for weapons without violating the Fourth Amendment.  See Fernandez, 600 F.3d 56, 59 (1st Cir. 2010).

The reasonableness of a seizure, including a Terry stop, is determined by balancing the Fourth Amendment interests of an individual in avoiding unreasonable intrusions, and the promotion of legitimate governmental interests occasioned by the intrusion.  See Hiibel, 542 U.S. at 187-88.  Here, based on the Superior Court's decision to suppress, the Court will presume that the initial stop of Fermanis's motor vehicle was not based

on a reasonable suspicion of criminal activity.  As explained above, however, for purposes of this Court's consideration of whether or not Machado's civil rights were violated by his pre-arrest seizure and subsequent arrest, the validity of the motor vehicle stop is not determinative.  The court must examine, instead, whether events subsequent to the stop were sufficient to render the seizure of Machado reasonable.

The Terry stop of Machado -- the brief period of questioning in the car, removal from the car, and pat-frisk -- was based on Carney's observations and information obtained after the motor vehicle stop.  This information included: Machado's furtive movements, the lateness of the hour, the location of the motor vehicle, Machado's evasive answers to simple questions regarding his identity, a bulge in Machado's waistband, and Fermanis's statement that she thought a warrant might exist for Machado's arrest.  All of these factors, taken together, even when weighed against Machado's Fourth Amendment right to be secure in his person, justified Carney's pre-arrest questioning and pat-frisk of Machado as part of a valid Terry stop.  See Terry, 392 U.S. at 30 (permitting limited search for weapons "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot").

Once the Terry stop was effected, and during its proper
duration, the police discovered sufficient information to
support a warrantless arrest of Machado based on probable cause.
The Terry stop of Machado and the consensual search of
Fermanis's car resulted in the discovery of heroin in the side
door compartment adjacent to Machado's seat.  Fermanis said that
the heroin was not hers, and that Machado had used heroin as
recently as last year.  These facts, in light of other facts
noted, would lead any reasonable officer to believe that a crime
had probably been committed.  Further, the criminal record check
conducted at the scene confirmed that there was an active
warrant for Machado's arrest.  The harm alleged by Machado
accrued only after a legitimate Terry stop, based on a
reasonable and articulable suspicion that Machado was engaged in
criminal activity, and his arrest, based on probable cause.
These findings are unaffected by the fact that the motor vehicle
stop itself was not based on a reasonable suspicion of criminal
activity.

I find that the seizure and arrest of Machado were properly
based on reasonable and articulable suspicion and probable
cause, respectively, based on facts that, in the context of a
civil rights action, are not excluded from the Court's
consideration by the illegality of the motor vehicle stop.

Accordingly, I recommend dismissal of Machado's false arrest claims asserted under 42 U.S.C. § 1983.  By extension, the claims of supervisory and municipal liability should also be dismissed.  See Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 12 (1st Cir. 2004) (absence of underlying constitutional error results in no liability for supervisors for failure to train under § 1983); Evans v. Avery, 100 F.3d 1033, 1040 (1st Cir. 1996) (absence of underlying constitutional violation results in no liability for municipality for failure to train).

II.  State Law Claims

       Machado has also asserted claims arising under the state constitution and tort law.  To the extent that any facts asserted in the complaint (doc. no. 1) give rise to any state law claim against any defendant, this court should decline to exercise supplemental jurisdiction over such claims.  See 28 U.S.C. § 1367(c)(3).  The state law claims asserted should therefore be dismissed without prejudice to refiling in the state court.

                              Conclusion

       For the foregoing reasons, the court should dismiss all of the claims raised in the complaint (doc. no. 1).  Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice.  See Fed. R. Civ. P.

72(b)(2).  Failure to file objections within the specified time
waives the right to appeal the district court's order.  See Sch.
Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st
Cir. 2010); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st
Cir. 2008).

_____
Landya B. McCafferty
United States Magistrate Judge


Date:     December 6, 2010

cc:       Christopher G. Machado, pro se

LBM:nmd

16